**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MERSADIES BONILLA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-2053** |
| | : | |
| **AMERICAN HERITAGE FEDERAL** | : | |
| **CREDIT UNION,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                 **May 19, 2020**

Twice in the same week last month, Mersadies Bonilla *pro se* sued her credit union and its agents seeking damages for the same alleged conduct; first in state court without our knowledge and then here. She filed here without paying the fees requiring we screen her complaint for merit. We dismissed her first complaint as lacking merit, and she filed an amended complaint with our leave.  While we screened her amended complaint, the credit union removed her previously undisclosed and first-filed state court case.  So we now have two pending cases brought by Ms. Bonilla against her credit union and its agents.  The first-filed state court case is not subject to our screening, but the credit union already moved to dismiss it following removal.  Our role today is to again review whether Ms. Bonilla's amended complaint states claims against American Heritage Federal Credit Union, two of its officers, and an unnamed branch manager.

Following review, she may proceed under the Fair Credit Reporting Act but not under the Fair Debt Collection Practices Act, Truth in Lending Act, or under her state law claims as not sufficiently plead. While we could ordinarily proceed in directing service on this single claim, we could also defer to the first-filed case and dismiss this case.  But we instead direct Ms. Bonilla to show cause as to why we should not consolidate the two cases under her first-filed No. 20-2276.

I.      *Pro se* **alleged facts.**

Ms. Bonilla's pleaded facts adopt our understanding of her facts in our May 9, 2020 Memorandum screening her original complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).[1] In screening her complaint, we noted the lack of specificity required us to guess as to some of the claims Ms. Bonilla intended to bring against Defendants, including the "debt" at issue, when Defendants' challenged conduct occurred, and facts supporting the individual Defendants' liability.[2]

Ms. Bonilla now identifies the time period and basis of her claims: July 2019 to early April 2020.  In July 2019, the Philadelphia District Attorney notified the Credit Union it intended to dismiss charges against Ms. Bonilla relating to an August 2016 transaction reversing $5,600 in deposits to Ms. Bonilla's savings account to the account of Credit Union member Joyce Eubanks. In response to what it considered fraudulent activity, the Credit Union "reversed" the $5,600 transfer to Ms. Bonilla's savings account on September 7, 2016.  After debiting $5,600 against Ms. Bonilla's savings account, her account had an ending balance of negative $3,334.92. The Credit Union charged-off the overdrawn savings account in December 2016 with a negative balance of $3,334.92 and began reporting the charged-off savings account to credit reporting agencies in January 2017.[3]

On March 11, 2020, the Commonwealth *nolle prossed* the criminal charges against Ms. Bonilla relating to the August 2016 transaction.[4]  Ms. Bonilla sent a letter to the Credit Union informing it of the *nolle prossed* charges and, in early April 2020, a Fraud Investigator at the Credit Union acknowledged he received Ms. Bonilla's letter, telling her the Credit Union would remove reporting of her account.[5]  The Credit Union stopped reporting the negative balances in early April 2020.

Despite receiving information from the District Attorney in July 2019, Ms. Bonilla alleges Defendants continued, until early April 2020, to (1) attempt to collect the money transferred from Ms. Eubanks' account to Ms. Bonilla's account it determined fraudulent in August 2016 representing it as a debt in violation of the Fair Debt Collection Practices Act;[6] (2) inaccurately report the August 2016 transaction as a debt to credit reporting agencies in violation of the Fair Credit Reporting Act;[7] (3) falsely represented to "consumer reporting agencies" the August 2016 transaction is a debt owed to the Credit Union in violation of part B of the Truth in Lending Act, Credit Transactions;[8] and (4) Defendants' conduct constitutes fraud, "gross negligence," and defamation under Pennsylvania law.

## II.    Ms. Bonilla files two cases involving the same conduct.

On April 23, 2020, Ms. Bonilla filed a complaint in the Philadelphia County Court of Common Pleas against American Heritage Credit Union, its Chief Executive Officer Bruce Foulke, its Risk Compliance Officer Danielle Basich, and an unnamed branch manager based on the same facts as this case.[9]  In the State Court Action, Ms. Bonilla alleges the Credit  Union and agents violated Pennsylvania statutes regulating credit unions and Pennsylvania law on comparative negligence and defamation.[10] Although not clearly pleaded in separate claims in the State Court action, Ms. Bonilla alleges Defendants' conduct constitutes a breach of their duty of care to her; failure to properly train employees; "intentional or gross negligence"; intentional infliction of emotional distress; negligence infliction of emotional distress; defamation; fraud; violation of the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*; unfair and deceptive trade practices; and their conduct prevented her from exercising her federal and state constitutional rights.[11]  Ms. Bonilla seeks a declaration Defendants violated her federal and state constitutional rights and actual damages, compensatory damages, punitive damages, attorney's fees and costs.

Five days later, Ms. Bonilla sued the same parties in this case alleging various violations of federal and state law based on the same facts she plead in the State Court Action.  We granted Ms. Bonilla's application to proceed *in forma pauperis*.[12]  Screening Ms. Bonilla's complaint here under section 1915(e)(2)(B)(ii), we initially dismissed her complaint with leave to amend.[13]  Ms. Bonilla filed an amended complaint in this action on May 10, 2020.[14]  Because we must screen the amended complaint, we did not direct the Clerk of the Court to issue summons and direct the United States Marshal Service to serve Defendants.

While we screened the amended Complaint, Defendants removed the State Court Action to this Court, marking it as related to another case Ms. Bonilla brought against the Credit Union in 2018.[15]  Defendants did not note this case as related, and may not have known of it.  Defendants removed the State Court Action under 28 U.S.C. § 1441, asserting federal question jurisdiction.[16]  Defendants invoked our limited federal question subject matter jurisdiction citing to Ms. Bonilla's passing reference to the Truth in Lending Act, the United States Constitution, and laws of the United States.[17]  In addition to alleging Defendants violated TILA and prevented her from exercising her federal and state constitutional rights, Ms. Bonilla seeks a declaration in this first-filed case "the acts and omissions [of the Defendants] … violate her rights under the United States Constitution and the laws of the United States."[18]

Congress mandates under 28 U.S.C. § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  "A cause of action does not typically 'arise under' federal law unless a federal question appears on the face of a well-pleaded complaint."[19]  "Under the well-pleaded complaint rule, federal question jurisdiction exists only if a federal question is affirmatively and distinctly presented on the face of the plaintiff's properly pleaded complaint" and "[t]he federal law under which a claim arises must

be a direct and essential element of the plaintiff's cause of action to establish federal question jurisdiction."[20]

Ms. Bonilla presents a federal question in the State Court Action including seeking a declaratory judgment Defendants violated her federal constitutional rights and the "laws of the United States."  After removal, Defendants moved to dismiss Ms. Bonilla's complaint.[21]  The motion to dismiss is ripe as Ms. Bonilla responded yesterday.

## III.    Analysis

In this case she filed before us with leave to not pay the filing fees, Ms. Bonilla sues under the Fair Credit Reporting Act ("FCRA") and implementing Regulation V,[22] the Fair Debt Collection Practices Act ("FDCPA"),[23] the Truth in Lending Act ("TILA) and implementing Regulation Z,[24] and state law claims for fraud, "gross" negligence, and defamation.[25]  Having granted Ms. Bonilla leave to proceed *in forma pauperis* as she demonstrated not being able of paying the fees to commence this case,[26] we must again study the sufficiency of her amended complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).[27]  When considering whether to dismiss a complaint for failure to state a claim under § 1915(e)(2)(B)(ii), we use the same standard used under Federal Rule of Civil Procedure 12(b)(6).[28] "'[A] complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'"[29] "We accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiff."[30] We are directed by our Court of Appeals to be "mindful of our 'obligation to liberally construe a *pro se* litigant's pleadings …'"[31]

### A.     Ms. Bonilla fails to state a claim under the FDCPA.

To state a claim under the Fair Debt Collection Practices Act, Ms. Bonilla must allege "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice

involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."[32] Ms. Bonilla failed to allege these elements in her original complaint. Copying our screening memorandum of her original complaint, she now alleges she is a consumer within the meaning of the FDCPA; Defendants are debt collectors; Defendants' challenged conduct involves an attempt to collect a "debt" as defined by the FDCPA; and Defendants violated 15 U.S.C. § 1692e of the FDCPA.[33]

### 1. Ms. Bonilla again fails to allege facts showing Defendants violated the FDCPA in attempting to collect a debt.

Section 1692e of the FDCPA provides "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and contains a non-exhaustive list of sixteen subsections of prohibited conduct.[34]  Ms. Bonilla does not cite any of the sixteen subsections of proscribed conduct, but a "debt collection practice can be a 'false, deceptive, or misleading' practice in violation of section 1692e even if it does not fall within any of the subsections."[35]

The FDCPA is a remedial statute we broadly construe to effect its purpose.[36] We are directed by our Court of Appeals to "analyze communications from lenders to debtors from the perspective of the 'least sophisticated debtor.'"[37] The problem here is there is no allegation of *any* communication from Defendants to Ms. Bonilla, let alone a "false, deceptive, or misleading representation or means" used in collecting debt from Ms. Bonilla.

Ms. Bonilla alleges "[t]his matter is not a debt in the sense that the Defendant offered a credit card to [her] for an interest rate and fee, but instead is a debt as defined in the FDCPA" and "this case does not involve an ordinary credit card transaction, as is defined, meant, and intended by the exception of Credit Unions to the FDCPA, but instead involves a transaction arising out of a believed fraud and a believed debt to be owed as a result of this believed fraud."[38]  She identifies

the nature of the debt as the Credit Union "seeking to recover the amount of property that it had to provide to offset the transaction on the account of Ms. Eubanks.  In fact, the property sought to be recovered is directly pursuant to the compensation provided to Ms. Eubanks as a result of the false charge, and then American Heritage Federal Credit Union went and attributed this debt amount to the Plaintiff.  Instead of collecting debt for Ms. Eubanks, they essentially purchased the debt from Ms. Eubanks and have made efforts to represent this debt and collect this debt as it is defined under the FDCPA."[39]

But she never alleged how Defendants attempted to collect a debt from her.  She fails to sufficiently plead facts to plausibly state a claim Defendants violated section 1692e.

### 2. Ms. Bonilla also fails to allege facts allowing us to infer the individual defendants attempted to collect a "debt" under the FDCPA.

Even assuming she pleaded how the Defendants attempted to collect a debt for her, Ms. Bonilla does not plead how the individual officers are debt collectors under the FDCPA.

The second element of the FDCPA requires Ms. Bonilla to plead sufficient facts to plausibly state each Defendant, including each individual officer, is a debt collector under the FDCPA.  Congress defines "debt collector", in part, "as any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[40]  "Debt collector" specifically excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."[41]

Ms. Bonilla alleges a "Defendant"—not identified—is a debt collector.[42]  In our May 7, 2020 memorandum, we explained the officer and employees of a creditor collecting debts in the name of the creditor are excluded from the definition of "debt collector." We noted, however, there

may be instances where officers and employees may be held liable when there is factual basis to do so, citing *Piper v. Portnoff Law Associates*[43] and *Pollice v. National Tax Funding, L.P.*[44]

 Both *Piper* and *Pollice* involved a court's review at the summary judgment stage where there is a developed factual record before the court.  In *Piper*, the court denied summary judgment brought by partners of a law firm who argued they cannot be held liable under the FDCPA. The court found plaintiff adduced evidence showing partners "signed debt collection letters, or authorized others to sign letters for them, and were involved in [the law firm's] day to day operations" of debt collection making them possibly liable under the FDCPA.[45]

Although we are not at the summary judgment stage and do not have a developed record, Ms. Bonilla has now twice failed to allege debt collection activity by Mr. Foulke, Ms. Basich,  or an unnamed branch manager.[46] There are no allegations Mr. Foulke, Ms. Basich, or the branch manager, signed debt collection letters to Ms. Bonilla or used false, deceptive, or misleading representations or means to collect the debt from her between July 2019 and April 2020.

Ms. Bonilla instead alleges Mr. Foulke, in his position as Chief Executive Officer, "had a duty/obligation to the Plaintiff to represent the truth and be diligent in the updating of the information they provided to other organizations, which they breached, and created a substantial amount of harm to the Plaintiff.  Their reckless/grossly negligent conduct tantamount to fraud is an intentional tort falling outside of the regular scope and function of their employment sufficient enough to qualify them for individual liability."[47] As to Ms. Basich and the unnamed branch manager, Ms. Bonilla alleges they are "also responsible for the misrepresentation of the Plaintiff's debts and obligations as well as the wide variety of harms and damages that the Plaintiff has suffered directly resulting from the actions of this Defendant as it pertained to their position but

was sufficiently reckless/grossly negligent and tantamount to fraud sufficient enough to qualify for individual liability."[48]

Ms. Bonilla must allege sufficient facts to state a claim that is at least plausible. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[49] There are no facts from which we may draw a reasonable inference the individual defendants are liable as "debt collectors" under the FDCPA. Ms. Bonilla alleges the "Defendants in this case have engaged in numerous attempts to collect a debt as defined by the FDCPA and engaged in numerous acts of conduct that have been consistent with the establishment and collection of debt," but she does not identify the conduct.[50] If she affirmatively asserts "Defendants … engaged in numerous attempts to collect debt … and numerous acts of conduct … consistent with the establishment and collection of debt" from her, we would assume Ms. Bonilla can allege something of those collection attempts—letters or phone calls or other conduct attempting to collect the debt.

Even assuming she could sufficiently plead facts to plausibly state a claim Defendants violated section 1692e (fourth element of a FDCPA claim) she has not plead the liability of the individual Defendants under the FDCPA.

**B.      Ms. Bonilla states a claim under the FCRA.**

Ms. Bonilla renews her claim against Defendants under the Fair Credit Reporting Act.  In our May 7, 2020 memorandum, we explained Ms. Bonilla cited only 15 U.S.C. § 1681, the "Congressional findings and statement of purpose" section of the FCRA. She did not identify which section of the FCRA or which part of implementing Regulation V, 12 C.F.R. part 1022, she believes Defendants violated.

We inferred Ms. Bonilla believes Defendants deliberately furnished inaccurate information to credit reporting agencies from July 2019 onward, but explained we did not know whether she believes Defendants violated 15 U.S.C. § 1681s-2(b), which imposes a duty upon furnishers of information to consumer reporting agencies, or some other section of the FCRA.[51]

Ms. Bonilla now alleges Defendants violated section 1681s-2(b) as a furnisher of inaccurate information to credit reporting agencies.[52] "To state a claim under the FCRA against a furnisher of credit information, as opposed to the credit reporting agency itself," Ms. Bonilla must allege three elements: (1) "'[s]he filed a notice of dispute with a consumer reporting agency;'" (2) "'the consumer reporting agency notified the furnisher of information of the dispute'"; and, (3) "'the furnisher of information failed to investigate and modify the inaccurate information.'"[53]

Ms. Bonilla alleges "correct information was reported to the Defendants in July 2019, but they made misrepresentations with regards to the Plaintiff all the way through March 2020" leaving the "case open with [credit reporting agencies] until April 2020;" she received a call from a Fraud Investigator "stating that they were going to make the change, thereby admitting the misrepresentation has been taking place from July 2019 to March 2020" leaving the "case open with [credit reporting agencies] until April 2020"; although advised as early as July 2019, Defendants "continued to make misrepresentations with regards to the Plaintiff for 8 months through until March 2020"; "Plaintiff was told that the inaccuracy would be removed then and there" (referring to July 2019); and "Defendants were informed of the inaccuracy and the dispute of its truthfulness in July 2019 and continued to misrepresent the truth for months afterwards, in violation of the FCRA."[54]

Accepting as true the factual allegations of her amended complaint and liberally construing those facts in the light most favorable to *pro se* Ms. Bonilla, her amended complaint states a claim to relief under the FCRA for furnisher liability plausible on its face.

### C.    Ms. Bonilla fails to state a claim under Part B of TILA.

Ms. Bonilla alleged Defendants violated sections 1601 through 1667 of the Truth in Lending Act, 15 U.S.C. §§ 1601-1667 and implementing Regulation Z, 12 C.F.R. § 1026.  In our screening memorandum, we explained there are five parts to TILA, each with multiple sections, governing General Provisions, Credit Transactions, Credit Advertising and Limits on Credit Card Fees, Credit Billing, and Consumer Leases. We explained the complaint does not indicate which section of the Fair Credit Billing Act and TILA she believes Defendants violated.

As we explained in our May 7, 2020 memorandum, Congress enacted TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."[55]  Part D of TILA, Credit Billing, is the Fair Credit Billing Act, codified at 15 U.S.C. §§ 1666, *et seq.* The "Fair Credit Billing Act seeks to prescribe an orderly procedure for identifying and resolving disputes between a cardholder and a card issuer as to the amount due at any given time."[56]

We dismissed Ms. Bonilla's TILA claim but allowed her to timely amend her complaint to plausibly state a claim under TILA, Regulation Z, and the Fair Credit Billing Act she believes each Defendant violated since July 2019 if she can do so in good faith.  In her amended complaint, Ms. Bonilla now alleges "Defendants violated the provision pertaining to truthfulness in Credit Transactions - having represented that the Plaintiff was a debtor to the Defendant to various

consumer reporting agencies when this was in fact not true and the Plaintiff was in fact not in owing to the Defendants of any debt."[57]

Part B of TILA, entitled Credit Transactions, requires a "creditor or lessor shall disclose to the person who is obligated on a consumer lease or a consumer credit transaction the information required under this subchapter."[58]  Information required to be disclosed by a creditor or lessor must be "clear[] and conspicuous[], in accordance with regulations of the [Bureau of Consumer Financial Protection]."  Information such as "annual percentage rate" and "finance charge" must be disclosed, and, among other information, the creditor must disclose the obligor's right of rescission, the conditions under which a finance charge may be imposed, the method of determining the finance charge, and terms of credit secured by a consumer's principal dwelling.[59]

Ms. Bonilla does not allege the Credit Union, or any of the individual Defendants, failed to disclose terms of a credit agreement to Ms. Bonilla as required by TILA. Ms. Bonilla alleges Defendants were untruthful when they represented to credit reporting agencies of her indebtedness to the Credit Union when she did not owe any such debt to it. This appears to be the same allegation as her Fair Credit Reporting Act claim. Failing to allege Defendants' violation of a disclosure obligation owed to her in a credit transaction, we dismiss Ms. Bonilla's claim under TILA.

**D.      Ms. Bonilla fails to state claims in this case under Pennsylvania law.**

Ms. Bonilla alleges three claims under Pennsylvania law: fraud, "gross" negligence, and defamation.  In our May 7, 2020 memorandum, we declined to exercise supplemental jurisdiction over Ms. Bonilla's state law claims and dismissed her state law claims without prejudice to her timely pleading them in state court or including them in an amended complaint.

Finding Ms. Bonilla's Fair Credit Reporting Act states a claim, we have federal question subject matter jurisdiction under 28 U.S.C. § 1331.  We now screen her state law claims under 28 U.S.C. § 1915(e)(2)(B)(ii) in the same way we screened her federal claims.

### 1.    Ms. Bonilla fails to state a fraud claim.

To state a claim for common law fraud under Pennsylvania law, Ms. Bonilla must allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."[60]  "In other words, 'a plaintiff must show that [she] justifiably relied on the defendant's wrongful conduct or representation and that [she] suffered harm as a result of that reliance."[61] Allegations of state common law fraud must comply with Federal Rule of Civil Procedure 9(b) and be pleaded with particularity.[62]

To satisfy Rule 9(b), a complaint "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise conduct with which [it is] charged.'"[63]  Plaintiffs satisfy Rule 9(b)'s particularity requirement "by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud'" and "also must allege who made a misrepresentation to whom and the general content of the misrepresentation."[64]

Ms. Bonilla alleges the Defendants willfully misrepresented the truth of the August 2016 transaction; an "error and flaw" in the Credit Union's "system" rendered it unable to "authenticate the validity of the initial transaction resulting in funds being transferred from the account of Ms. Eubanks"; seeking to offset the "loss," the Credit Union "recklessly and without evidence attributed the reason for this to be fraudulent conduct [by Ms. Bonilla] without consideration of

any other alternatives or possibilities, such as the orchestration of this transaction by an entity that was not [Ms. Bonilla]"; lack of evidence showing Ms. Bonilla's involvement ultimately led to the dismissal of the criminal charges against her in the Philadelphia County Court of Common Pleas; the Credit Union, with a financial interest in "writing-off losses" due to fraud rather than its "own internal flaws and errors" and in retaliation against Mrs. Bonilla, continued to misrepresent information about her to credit reporting agencies even after learning in July 2019 the Philadelphia District Attorney intended to dismiss criminal charges; the misrepresentations made by the Credit Union were "relied upon by others such as consumer agencies and insurance companies that compensate the bank for losses due to reported fraud, to their financial benefit and to the detriment of [Ms. Bonilla], knowingly, willfully, intentionally, and having already been made aware of the truthfulness of the matter, in violation of Pennsylvania Law on Fraud and Fraudulent representation."[65]

The problem is Ms. Bonilla fails to allege a misrepresentation made by the Credit Union to *her* intending to mislead *her* into justifiably relying on the misrepresentation resulting in injury to her proximately caused by the reliance. She alleges the Credit Union, by falsely reporting to credit reporting agencies a negative balance on her savings account (as a result of the reversal in the August 2016 transaction) even after July 2019, made a misrepresentation *to the credit reporting agencies* which those agencies relied on causing harm to her. She fails to allege *she* justifiably relied on the Credit Union's misrepresentations causing harm to her as a result of *her* reliance.

She also asserts these claims in the first-filed case and may be afforded an opportunity to amend her claims in the first-filed case following our review of the ripe motion to dismiss in the first-filed case.

## 2.   Ms. Bonilla fails to state a negligence claim.

Ms. Bonilla purports to bring a claim for "gross negligence." "[T]here is no separate cause of action under Pennsylvania law for gross negligence."[66] While it is not a separate cause of action, gross negligence is "recognized by Pennsylvania and federal courts interpreting Pennsylvania law as 'a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference.'"[67]

Ms. Bonilla alleges she may recover under Pennsylvania law where a defendant is "negligent/grossly negligent with regards to their duties and responsibilities to [her], as has taken place in this case."[68] To the extent Ms. Bonilla attempts to state a cause of action for "gross negligence," we dismiss it. Liberally construing her complaint, we read her claim as one for negligence under Pennsylvania law.

To allege common law negligence under Pennsylvania law, Ms. Bonilla must allege (1) Defendants owed her a duty of case; (2) Defendants breached that duty; (3) the breach resulted in injury to her; and (4) she suffered an actual loss or damage.[69]  Under Pennsylvania law, "[t]he primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff."[70] "A duty 'can arise from common law, by statute and by contract.'"[71]

We have no fact allowing us to infer the nature of the Defendants' duties. Ms. Bonilla alleges: "Defendants had responsibilities and obligations with regards to the Plaintiff as it pertained to their transactions with one another" including "truthfulness and diligence, as well as accuracy, all of which were substantially breached to the substantial harm and damages of the Plaintiff"; "Defendants were admittedly made aware of the inaccuracy of their reporting in July 2019 and continued to misrepresent the truth with regards to the Plaintiff to other consumer credit agencies which substantially harmed the rights and interests of the Plaintiff"; "Pennsylvania common law

on gross negligence allows the Plaintiff to recover in a civil action in cases where the Defendant has been negligent/grossly negligent with regards to their duties and responsibilities to the Plaintiff, as has taken place in this case."[72]

As currently pleaded, we do not know whether the duty owed by the Credit Union and individual Defendants, if any, to Ms. Bonilla arose from a common law duty or by statute or by contract. Ms. Bonilla alleges a duty created by the parties' "transactions with one another," suggesting a possible contractual relationship, and alleges Defendants breached the duty by continuing to furnish inaccurate and false information to credit reporting agencies, suggesting a breach of the Fair Credit Reporting Act. We would only be guessing as to a duty. While we can infer some basis for a claim, we cannot guess as to facts which may create a duty.

As with all her state law claims, Ms. Bonilla asserts these claims in the first-filed case and may now be afforded an opportunity to amend her claims following our review of the ripe motion to dismiss in the first-filed case.

### 3.     Ms. Bonilla fails to state a defamation claim.

Under Pennsylvania law, Ms. Bonilla must plead facts giving rise to defamation: "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; [and] (7) abuse of a conditionally privileged occasion."[73]

A statement is capable of a defamatory meaning where the statement "tends so to harm the reputation of another as to lower [her] in the estimation of the community or to deter third parties from associating or dealing with [her]"[74] We must view the alleged defamatory statements in

context.[75]  "It is not enough that the victim of the [statements] ... be embarrassed or annoyed, [she] must have suffered the kind of harm which has grievously fractured [her] standing in the community of respectable society."[76]

Ms. Bonilla alleges "[e]ach of these elements is present in the instant matter through the wide variety of misrepresentations and inaccuracies that have taken place as a result of the conduct of the Defendants directly that have damaged and harmed the Plaintiff as a result, that are listed in 1-66 in this amended complaint."[77]  We do not know "the wide variety of misrepresentations and inaccuracies that have taken place" on which Ms. Bonilla bases her defamation claim. We may infer Ms. Bonilla means the Credit Union's reporting of the delinquency in her account from July 2019 to early April 2020, but this liberal inference does not suggest a "wide variety" of misrepresentations as she alleges. Ms. Bonilla fails to plead which of the Defendants made statements, who received the communications, an abuse of privilege, and special harm, and how the statements caused her harm.  Ms. Bonilla fails to plead facts that plausibly give rise to a claim of defamation.

As with all her state law claims, Ms. Bonilla asserts these claims in the first-filed case and may be afforded an opportunity to amend her claims in the first-filed case following review of the ripe motion to dismiss in the first-filed case.

### E.    We defer dismissing this second filed case to allow Ms. Bonilla to address consolidating the remaining claim with the first-filed case.

We now have two pending actions brought by Ms. Bonilla arising from the same facts: (1) her State Court Action filed on April 23, 2020 and removed by Defendants on May 13, 2020 now docketed at No. 20-2276; and (2) this case filed here on April 28, 2020 and now the subject to two federal court opinions screening her allegations for merit.

Belaboring the obvious, the State Court Action, now docketed at No. 20-2276, is the "first-filed" action.  Under the "first-filed" rule, "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."[78]  For purposes of determining which case is "first-filed," we use the date of filing in state court rather than the removal date.[79] The purpose of the first-filed rule is to "'encourag[e] sound judicial administration and promot[e] comity among federal courts of equal rank' by giving courts discretion to enjoin a later-filed case if it 'involve[s] the same parties and the same issues already before another district court" and "aids in the 'prompt and efficient administration of justice' and avoids the economic waste and risk of conflicting judgments inherent in duplicative litigation."[80]

If we determine the first-filed rule applies, "there is a presumption that the later-filed action should be dismissed, transferred, or stayed."[81] The State Court Action is the first-filed action because Ms. Bonilla filed it on April 23, 2020 and then filed this action on April 28, 2020.  We are not concerned with Defendants' removal date.  Although we do not have two different district courts, we do have two cases arising from the same facts before us.

As we find dismissal of all claims is not warranted at this stage, we could either transfer or stay this second filed case.  Transfer does not make sense given both cases are before us.  We could also stay this case.  But there seems to be no good reason to further delay resolving these issues through a stay.  We instead require Ms. Bonilla show cause as to why we should not consolidate the two cases into the one caption and docket at No. 20-2276.

## IV.    Conclusion

Ms. Bonilla has *pro se* filed three complaints in two courts challenging her credit union's decisions.  After screening the two complaints she filed here as required by Congress, we dismissed the original complaint and today dismiss all but her Fair Credit Reporting Act claim.  But we

cannot think of a reason why we should have two cases now before us on the same facts. Ms. Bonilla shall show cause on or before May 26, 2020 as to why we should not consolidate this second filed case into No. 20-2276.

---

[1] The recitation of the facts Ms. Bonilla adopts in her amended complaint are detailed in ECF Doc. No. 9.

[2] Ms. Bonilla asserts claims against American Heritage Credit Union, Bruce Foulke, President and Chief Executive Officer of the Credit Union, Danielle Basich, Risk Compliance Officer at the Credit Union, and an unnamed branch manager.

[3] ECF Doc. No. 10 at ¶ 12.

[4] *Id.* at ¶ 14.

[5] *Id.* at ¶ 18.

[6] *Id.* at ¶ 26.

[7] *Id.* at ¶ 39.

[8] *Id.* at ¶ 46.

[9] *Bonilla v. American Federal Credit Union, et al.*, No. 20-2276 at ECF Doc. No. 1-4 ("State Court Action"). Ms. Bonilla identifies the Credit Union's Chief Executive Officer as "Bruce Foluke." We are advised by the Credit Union his name is properly spelled "Foulke," and refer to him as Mr. Foulke.

[10] State Court Action, ECF Doc. No. 1-4 at ¶¶ 7-13.

[11] *Id.* at ¶¶ 28-50.

[12] ECF Doc. No. 4.

[13] ECF Doc. Nos. 8, 9.

[14] ECF Doc. No. 10.

[15] No. 18-3293. On April 4, 2019, we granted the Credit Union's motion for judgment on the pleadings and dismissed Ms. Bonilla's fourth amended complaint with prejudice. *See Bonilla v. Am. Heritage Fed. Credit Union*, No. 18-3293, 2019 WL 1506012 (E.D. Pa. Apr. 4, 2019).

---

[16] *See* State Court Action, No. 20-2276, ECF Doc. No. 1 at ¶ 3.  The law firm filing the notice of removal did so on behalf of the Credit Union, Bruce Foulke, and Danielle Basich.  *Id.* at 2.

[17] *Id.*, ECF Doc. No. 1 at ¶ 2.

[18] *Id.*, ECF Doc. No. 1-4 at ¶ 62.a.

[19] *New Jersey Carpenters and the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8 (1983)).

[20] 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE-CIVIL § 107.71 (Matthew Bender 3d ed.).

[21] State Court Action, No. 20-2276, at ECF Doc. No. 5. Contrary to the notice of removal, the motion to dismiss is filed on behalf of the Credit Union and Mr. Foulke only. The motion represents Ms. Basich is "not currently employed with" the Credit Union and asserts she "has not been served in accordance with state law." *Id.* at ¶ 4; ECF Doc. No. 5-2 at 1-2.  The pleadings are not closed as yet in the first-filed case as Ms. Bonilla must still effect service upon Ms. Basich, but we query how and why counsel could remove on her behalf but then claim she has not been served.

[22] 15 U.S.C. § 1681; 12 C.F.R. part 1022.

[23] 15 U.S.C. § 1692.

[24] 15 U.S.C. §§ 1601-1667; 12 C.F.R. § 1026.

[25] The amended complaint dropped from the original complaint claims under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 12 U.S.C. § 5531, and Regulation P, 12 C.F.R. part 1016.

[26] ECF Doc. No. 4.

[27] Section 1915(e)(2)(B)(ii) requires we screen *in forma pauperis* proceedings to "dismiss the case at any time if [we] determin[e] that – (B) the action … -- (ii) fails to state a claim on which relief may be granted …" 28 U.S.C. § 1915(e)(2)(B)(ii). We concern ourselves today with the sufficiency of the amended complaint's allegations based on federal statute, the claimed basis of our jurisdiction under 28 U.S.C. § 1331.

[28] *Elansari v. Univ. of Pennsylvania*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

[29] *Id.* (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[30] *Id.*

[31] *Dooley v. Wetzel*, No. 19-1684, 2020 WL 1982194, * 4 (3d Cir. Apr. 27, 2020) (citing *Higgs v. Attorney Gen.*, 655 F.3d 333, 339 (3d Cir. 2011), as amended (September 19, 2011)).

[32] *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (quoting *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018)).

[33] The amended complaint does not identify section 1692e by its citation. Instead, it identifies the complained of conduct as "[t]he use of false, deceptive, or misleading representations or means in connection with the collection of a debt," which is the language of section 1692e.

[34] 15 U.S.C. § 1692e.

[35] *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993)).

[36] *Lesher*, 650 F.3d at 997.

[37] *Id.* (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir.2006)).

[38] ECF Doc. No. 10 at ¶ 26.

[39] *Id.*

[40] *Id.* at § 1692a(6).

[41] *Id.* at § 1692a(6)(A).

[42] ECF Doc. No. 10 at ¶ 25.

[43] 274 F.Supp.2d 681 (E.D. Pa. 2003), *aff'd*, 396 F.3d 227 (3d Cir. 2005).

[44] 225 F.3d 379 (3d Cir. 2000), *abrogated on other grounds, Tepper v. Amos Fin., LLC*, 225 F.3d 379 (3d Cir. 2018).

[45] *Piper*, 274 F. Supp. 2d at 689-90.

[46] ECF Doc. No. 10 at ¶¶ 31-33.

[47] *Id.* at ¶ 31.

[48] *Id.* at ¶¶ 32-33.

[49] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[50] ECF Doc. No. 10 at ¶ 28.

---

[51] ECF Doc. No. 9 at 11-13.

[52] Ms. Bonilla does not cite section 1681s-2(b) of the FCRA. She instead adopts our initial screening memorandum setting out the elements of a claim against a furnisher under 15 U.S.C. § 1681s-2(b). ECF Doc. No. 9 at 11. In our memorandum, we explained we did not know whether Ms. Bonilla believes Defendants violated 15 U.S.C. § 1681s-2(b) of the FCRA because she did not cite this section of the Act and cited only the "Congressional purpose" section. In her amended complaint, Ms. Bonilla copies our memorandum setting out the elements of a claim under section 1681s-2(b). We assume she now intends to bring a claim under that section.

[53] *Prater v. Am. Heritage Federal Credit Union*, 351 F.Supp.3d 912, 918 (E.D. Pa. 2019) (quoting *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016) and citing 15 U.S.C. §§ 1681s-2(b), 1681n & § 1681o).

[54] ECF Doc. No. 10 at ¶ 39.

[55] 15 U.S.C. § 1601.

[56] *Gray v. Am. Express Co.*, 743 F.2d 10, 13 (D.C. Cir. 1984).

[57] ECF Doc. No. 10 at ¶ 46.

[58] 15 U.S.C. § 1631(a).

[59] 15 U.S.C. §§ 1632-1640.

[60] *Richards v. Ameriprise Financial, Inc.*, 152 A.3d 1027, 1035 (Pa. Super. Ct. 2016) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).

[61] *Id.* (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)).

[62] *Signature Med. Ltd., LLC v. U.S. Med-Equip, Inc.*, No. 15-3785, 2017 WL 4047560, at *4 (E.D. Pa. Sept. 11, 2017) (citing *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983)).

[63] *Khan v. Ocwen Fin. Corp.*, No. 16-3293, 2017 WL 590262, at *5 (E.D. Pa. Feb. 13, 2017) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

[64] *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 102 (3d Cir. 2017) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

[65] ECF Doc. No. 10 at ¶¶ 52-54.

[66] *Spence v. ESAB Group, Inc.*, 623 F.3d 212, 215 n.2 (3d Cir. 2010) (citing *Hunter v. Squirrel Hill Assocs., L.P.*, 413 F.Supp.2d 517, 520 n. 2 (E.D. Pa.2005) ("While Pennsylvania courts

acknowledge differing standards of care, they do not recognize degrees of negligence as separate causes of action."); *Floyd v. Brown & Williamson Tobacco Corp.*, 159 F.Supp.2d 823, 828 (E.D. Pa. 2001) (dismissing separate claim of gross negligence because under Pennsylvania law "'gross negligence' refers to a standard of care, rather than to a separate claim")).

[67] *Moore v. Wetzel*, No. 18-1523, 2019 WL 1397405, at *10 (M.D. Pa. Mar. 6, 2019) (citing *Legion Indem. Co. v. Carestate Ambulance, Inc.*, 152 F.Supp.2d 707 (E.D. Pa. 2001), *Hunter*, 413 F.Supp.2d at 520 n. 2 (citations omitted), and *Jordan v. City of Philadelphia*, 66 F.Supp.2d 638, 644 (E.D. Pa. 1999) (the term "gross negligence refers only to a heightened standard of care, not to a cause of action distinct from ordinary negligence")).

[68] ECF Doc. No. 10 at ¶ 59.

[69] *Martin v. Evans*, 711 A.2d 458, 461(Pa. 1998).

[70] *Shamnoski v. PG Energy, Div. of S. Union Co.*, 858 A.2d 589, 602–03 (Pa. 2004) (quoting *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000)).

[71] *AMCO Ins. Co. v. Emery & Assoc., Inc.*, 926 F.Supp.2d 634, 642 (W.D. Pa. 2013) (quoting *Emerson v. Adult Cmty. Total Servs., Inc.*, 842 F.Supp. 152, 155 (E.D. Pa. 1994)).

[72] ECF Doc. No. 10 at ¶¶ 57-59.

[73] *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015) (quoting 42 Pa. Cons. Stat. Ann. § 8343(a)).

[74] *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 124 (Pa. 2004) (quoting *Birl v. Philadelphia Elec. Co.*, 167 A.2d 472, 475 (Pa. 1960)).

[75] *Id.* (quoting *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987)).

[76] *Id.* (quoting *Scott–Taylor, Inc. v. Stokes*, 229 A.2d 733, 734 (Pa. 1967)).

[77] ECF Doc. No. 10 at ¶ 67.

[78] *Monzo v. Bazos*, 313 F. Supp. 3d 626, 630 (E.D. Pa. 2017) (quoting *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990)).

[79] *Id.* at 631-33 (collecting cases).  Although our Court of Appeals has not decided the issue of which date to use to determine a "first-filed" case removed from state court, we adopt the reasoning of our colleague Judge McHugh in *Monzo*.

[80] *Id.* at 630 (quoting *E.E.O.C.*, 850 F.2d at 971 and *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941)).

[81] *Id.* at 630 (quoting *Landau v. Viridian Energy PA*, 274 F.Supp.3d 329, 333 (E.D. Pa. 2017)).